UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | NO. 4:23CR018 |
| | § | (Judge Mazzant) |
| ALI DANIAL HEMANI | § | |

## MOTION TO DISMISS INDICTMENT

COMES NOW, ALI DANIAL HEMANI, Defendant, and moves under Federal Rule of Procedure 12(3)(B) to have the sole count of the indictment 18 U.S.C. § 922(g)(3), possession of a firearm while being a drug user, dismissed as unconstitutionally vague and violative of his Second Amendment Right based on the framework announced by the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

In support thereof, Mr. Hemani would show the following:

### I. Procedural History

On February 8, 2023, Mr. Hemani was indicted for one count of Possession of a Firearm by a User of a Controlled Substance in violation of 18 U.S.C. § 922(g)(3), based on an August search of the home he shares with his parents. On February 13, 2023, at his Initial Appearance he entered a plea of "Not Guilty".

### II. Second Amendment Jurisprudence Summary

> "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

The Second Amendment of the United State Constitution protects the individual right of people to keep and bear arms. *District of Columbia v. Heller,* 554 U.S. 570, 592, 624 (2008).

1

In 2022 the Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, dramatically changed Second Amendment jurisprudence throwing most gun prohibition laws into question and creating reams of subsequent litigation. *Bruen*, 142 S. Ct. 2111 (2022).

Courts previously decided Second Amendment challenges by balancing the strength of the government's interest in their firearm regulation against the degree of infringement on the challenger's right to keep and bear arms. *Bruen* rejected that approach, instructing Courts to now consider only the "constitutional text and history." *Id.* at 2128-29.

If "the Second Amendment's plain text covers an individual's conduct," then "the Constitution presumptively protects that conduct." *Id.* at 2129-30. To rebut this presumption, the government must show that a challenged law "is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30. The test for historical consistency is demanding: "a firearm regulation is consistent with American tradition only if similar regulations were widespread and commonly accepted in the founding era, when the Second Amendment was adopted." *Id.* at 2129-30.

### III. Legal Tests
### A. Before *Bruen*, 2nd Amendment Two Step

In *District of Columbia v. Heller*, the Supreme Court held the Second Amendment codified a pre-existing individual right to possess and use firearms for lawful purposes like self-defense. 554 U.S. 570, 592, 624 (2008). Based on their historical survey, the *Heller* Court concluded the right protected by the Second Amendment is not limited to the carrying of arms in a militia. *Id.* at 586. Rather, the Amendment confers an individual right to keep and bear arms that belongs to all Americans. *Id.* at 581, 622.

Two years later, in *McDonald v. City of Chicago*, the Court reaffirmed *Heller*'s central holding that the Second Amendment protects a personal right to keep and bear arms

2

for lawful purposes, most notably for self-defense within the home. 561 U.S. 742, 780 (2010). The Court held that the Second Amendment is fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition, it applies to the states as well as the federal government. *Id.* at 767. It should not be treated as a second-class right subject to an entirely different body of rules than the other Bill of Rights guarantees. *Id.* at 780.

Following *Heller* and *McDonald*, the Courts of Appeals coalesced around this two-step framework when assessing Second Amendment claims, combining a historical analysis with means-end scrutiny. *Bruen*, 142 S. Ct. at 2126-27.

First, the Government may justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood. *Kanter v. Barr*, 919 F.3d 437, 441 (CA7 2019). Then a Court ascertains the Second Amendment's original scope in relation to the conduct at issue through a historical analysis. *United States v. Focia*, 869 F.3d 1269, 1285 (CA11 2017).

If the regulated conduct falls outside the Amendment's original scope, the analysis stops there, the regulated activity is categorically unprotected. *United States v. Greeno*, 679 F.3d 510, 518 (CA6 2012). If the historical evidence shows the conduct is not outside of the Amendment's scope or it is inconclusive, the court proceeds to step two.

At the second step, Courts analyze how close the regulation come to the core of the Second Amendment right and the severity of the regulations' burden on that right. *Kanter*, 919 F.3d at 441. The Circuit Courts generally maintain that the core Second Amendment right is limited to self-defense in the home. *Gould v. Morgan*, 907 F.3d 659, 677 (CA1 2018). Though that has been extended by at least one Circuit to covering to carrying in public for self-defense. *Wrenn v. District of Columbia*, 864 F.3d 650, 668 (CADC 2017).

If the core Second Amendment right is burdened, Courts then apply strict scrutiny and ask whether the Government can prove that the law is narrowly tailored to achieve a compelling governmental interest. *Kolbe v. Hogan*, 849 F.3d 114, 133 (CA4 2017), *United States v. Emerson,* 270 F.3d 203 (5th Cir.2001). Otherwise, they apply intermediate scrutiny and consider whether the Government can show that the regulation is substantially related to the achievement of an important governmental interest. *Kachalsky v. County of Westchester*, 701 F.3d 81, 101 (CA2 2012).

### B. New *Bruen* Text & History Test

*Bruen* finds the two-step approach is "one step too many." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2127 (2022). In its place, the new standard Courts must follow is established:

> "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* at 2129–30.

The question then is relatively straightforward, does the text of the Amendment cover the conduct? If it does, then any regulation prohibiting or limiting it is presumptively unconstitutional. *Id.* at 2129-30, 2135.

To rebut the presumption of unconstitutionality, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Id.* at 2132. Only if a firearm regulation is consistent with this Nation's historical tradition may a Court conclude that the individual's conduct falls outside the Second Amendment's unqualified command. *Id.* at 2132.

Post-*Bruen*, the Fifth Circuit expressly repudiated means-end scrutiny used previously in cases like *Emerson*. *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023) (holding § 922(g)(8)

4

unconstitutional). "To the extent that the [*Bruen*] Court did not overtly overrule *Emerson* — it did not cite those cases but discussed other circuits' similar precedent—*Bruen* clearly "fundamentally change[d]" our analysis of laws that implicate the Second Amendment, *Bonvillian Marine*, 19 F.4th at 792, rendering our prior precedent obsolete." *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023).

Courts will now consider whether historical precedent evidences a comparable tradition of regulation. *Id.* at 2131-32. If no such tradition exists, then the statute being challenged is unconstitutional. *Id.* at 2132. Insofar as there are multiple plausible interpretations of an ambiguous historical record, Courts must favor the one that is more consistent with the Second Amendment's command. *Id.* at 2141 n.11.

The relevant "historical tradition" for purposes of a federal gun regulation is that which existed in 1791, when the Second Amendment was ratified. *Id.* at 2136.[1] Courts may look to the tradition of firearms regulations "before . . . and even after the founding" period, only with care. *Id.* at 2131-32.

Courts neither rely on an ancient practice that was obsolete at the time of the adoption of the Constitution, nor give post-enactment history more weight than it can rightly bear. *Id.* at 2137. Mid- to late-19th-century history provides little insight into the meaning of the Constitution in 1791 and is only be credited to the extent it provides confirmation of prior practice with which it is consistent. *Id.* Post-ratification adoption or acceptance of laws that

---

[1] Individual rights enumerated in the Bill of Rights were made applicable to the States through the Fourteenth Amendment in 1868, for this analysis the Court expressly rejected that timeframe in favor of when Bill of Rights was adopted in 1791.

are inconsistent with the original meaning of the constitutional text cannot overcome or alter that text. *Id.*

If presented with regulations that implicate unprecedented societal concerns, dramatic technological changes, or other issues unimaginable at the founding, "analogical reasoning" is to be used to find the best possible alignment with something that was present in the era. *Id.* at 2132.

### i. Covered Person

*Heller* explained that the words "the people" in the Second Amendment have been interpreted throughout the Constitution to "unambiguously refer[ ] to all members of the political community, not an unspecified subset." 554 U.S. at 580, 128 S.Ct. 2783. Further, "the people" "refer[ ] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (citing *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990)). For those reasons, the *Heller* Court began its analysis with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans," *id.* at 581, 128 S.Ct. 2783. *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023).

### ii. Historical Analogue Inquiry

The historical inquiry is fairly straightforward when the regulation addresses a general societal problem that has persisted since the 18th century because the lack of distinctly similar historical regulations would evidence that the current one is inconsistent with the Second Amendment. *Bruen*, 142 S. Ct. at 2131. If earlier generations addressed the problem by materially different means, that would also evidence the current regulation is unconstitutional. *Id.*

The challenge comes when the regulation addresses unprecedented societal concerns or dramatic technological changes. *Id.* at 2133. In those cases it is impossible to identify a historical

twin to the law, so the Government must show a historical tradition of laws that are sufficiently analogous. That analysis turns on whether those historical laws impose a comparable burden on the right of armed self-defense and are comparably justified. *Id.* at 2133.

"Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Heller* at 634. Post-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text. *Bruen* at 2137.

Generally, the historic laws referenced in these cases fall into three categories: (1) English and American laws (and sundry unadopted proposals to modify the Second Amendment) providing for disarmament of "dangerous" people, (2) English and American "going armed" laws, and (3) colonial and early state surety laws. *See Rahimi*, 59 F.4th 163 (discussion of historic laws).

### iii. Presumptively Risky Persons, Virtuousness & Law-Abiding

There are arguments that historical traditions support restrictions on unlawful, unvirtuous, and other presumptively risky people from having firearms[2][3]. These are inconsistent with the decisions in *Heller* and *Bruen*. *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023). *Rahimi* is about § 922(g)(8) (a statute similar to § 922(g)(3)) which prohibits having a firearm while subject to a court's protective order.

---

[2] Pre-*Bruen* decisions, <u>Binderup v. Att'y Gen. U.S.</u>, 836 F.3d 336, 357 (3d Cir. 2016) (en banc) (Hardiman, J., concurring in part and concurring in the judgments) ("We have found no historical evidence on the public meaning of the right to keep and bear arms indicating that 'virtuousness' was a limitation on one's qualification for the right— contemporary insistence to the contrary falls somewhere between guesswork and *ipse dixit*."); *Folajtar v. Attorney Gen. of the United States*, 980 F.3d 897, 918 (3d Cir. 2020) (Bibas, J., dissenting) ("The focus on virtue rests on strained readings of colonial laws and ratifying conventions perpetuated by scholars and courts' citing one another's faulty analyses.").

[3] Recent 922(g)(3) cases upheld on "unlawful and unvirtuous exceptions", *US v. Posey* , No. 2:22-CR-83 JD, 2023 WL 1869095, at *4 (N.D. Ind. Feb. 9, 2023); *United States v. Seiwert*, 2022 WL 4534605 (N.D. Ill. Sept. 28, 2022); *United States v. Black*, No. CR 22-133-01, 2023 WL 122920, at *3 (W.D. La. Jan. 6, 2023); *United States v. Lewis*, No. CR-22-368-F, 2023 WL 187582, at *2 (W.D. Okla. Judge Jan. 13, 2023).

According to the Fifth Circuit, this concept is tied into pre-*Heller* interpretations that the Second Amendment is a civic right exercised by citizens acting together in a militia, not an individual right.[4] They find that *Heller* expressly rejects that interpretation and holds that the Second Amendment is an individual right. *Heller*, 554 U.S. at 595; *Rahimi*, 59 F.4th 163.

Previously, they upheld § 922(g)(3) under a pre-*Heller* analysis that analogized the statute with similar, long-standing prohibitions which prevented the possession of a firearm by felons, or those who are subject to domestic restraining orders. *United States v. Patterson*, 431 F.3d 832, 835-36 (5th Cir. 2005) (citing *United States v. Emerson,* 270 F.3d 203 (5th Cir.2001)).

Post-*Heller* the Fifth Circuit still held § 922(g)(3) as constitutional under its *Emerson* logic, explaining that "unlawful users of controlled substances pose a risk to society if permitted to bear arms and ... prohibiting such persons from possessing firearms does not infringe on the Second Amendment." *United States v. May*, 538 F. App'x 465, 466 (5th Cir. 2013)[5].

In *Rahimi*, the Court unravels that broad exception. *Rahimi*, 59 F.4th 163. They explained that *Heller*'s reference to "law-abiding, responsible" citizens[6] is only meant to exclude from the

---

[4] Pre-*Bruen* decisions*; Binderup*, 836 F.3d at 371 (Hardiman, J., concurring in part & concurring in judgments) (cleaned up). *See id.* at 372 n.18; *Kanter v. Barr*, 919 F.3d 437, 451–53 (7th Cir. 2019) (Barrett, J. dissenting), *abrogated by Bruen*, 142 S. Ct. 2111 (Barrett, J., dissenting); *Folajtar*, 980 F.3d at 912 (Bibas, J., dissenting).

[5] Other post- *Heller* § 922(g)(3) decisions. *United States v. Daniels*, 2022 WL 2654232, at *3 (citing *United States v. Yancey,* 621 F.3d 681 (7th Cir. 2010); *United States v. Seay*, 620 F.3d 919 (8th Cir. 2010); *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011); and *United States v. Richard*, 350 F. App'x 252 (10th Cir. 2009)).

[6] Split in District Court Rulings and whether "the people" applies only to law-abiding people. *Range v. Attorney General United States*, 53 F.4th 262, 266 (3d Cir. 2022) ("[W]e conclude that 'the people' constitutionally entitled to bear arms are the 'law-abiding, responsible citizens' of the polity, a category that properly excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses, whether or not those crimes are violent"); *United States v. Sanchez*, 2022 WL 17815116, at *2-3 (W.D. Tex. Dec. 19, 2022) (holding that the language of § 922(g)(3) is not covered by the plain text of the Second Amendment because the Second Amendment protects the rights of ordinary law-abiding citizens); *United States v. Daniels,* —— F.3d ——, 2022 WL 2654232, at *3 (S.D. Miss. July 8, 2022) (observing that there may be "some doubt" as to whether § 922(g)(3) is covered by the plain text of the Second Amendment, given the interpretation that the right is guaranteed to "ordinary, law-abiding, responsible citizens"). *United States v. Nevens*, 2022 WL 17492196, at *2 (C.D. Cal. Aug. 15, 2022) ("Defendant is not a law-abiding citizen, and regulations governing non-law abiding citizens' use of firearms

Court's discussion groups that have historically been stripped of their Second Amendment rights. *Rahimi*, 59 F.4th 163. The decision should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings ....". *Bruen*'s reference to "ordinary, law-abiding" citizens is no different. *See* 142 S. Ct. at 2134; *Rahimi*, 59 F.4th 163. The logic the Court applies to § 922(g)(8) applies to § 922(g)(3) as neither statute addresses felons or the mentally ill.

## IV. § 922(g)(3)

18 U.S.C. § 922(g)(3), makes it unlawful for any person ... who is an unlawful user of or addicted to any controlled substance ... to ... possess in or affecting commerce, any firearm or ammunition." Under the *Bruen and Rahimi* analysis this statute is unconstitutional.

### A. Text

The Second Amendment's plain text covers the conduct of Mr. Hemani possessing a handgun. It is not in dispute that Mr. Hemani is an American citizen who has resided in the United States his entire life, which makes him part of the "national community," and thus part of "the people" to which the Second Amendment applies. *Heller*, 554 U.S. at 580; *Bruen*, 142 S. Ct. at 2156.[7]

---

do not implicate *Bruen* and *Heller*"). *United States v. Kays*, ––– F.Supp.3d –––, 2022 WL 3718519, at *2 (W.D. Okla. Aug. 29, 2022) (declining "to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws"); *United States v. Bernard*, 2022 WL 17416681, at *7 (N.D. Iowa Dec. 5, 2022) (rejecting "the government's argument that the Second Amendment applies only to law-abiding citizens as a textual matter"); *United States v. Charles*, ––– F.3d –––, 2022 WL 4913900, at *2, (W.D. Tex. Oct. 3, 2022) (holding possession of a firearm plainly falls within the Second Amendment's protection of the right to keep and bear arms); *Fried v. Garland*, 2022 WL 16731233, at *5 (N.D. Fla. Nov. 4, 2022) (quoting Heller, 554 U.S. at 581, 128 S.Ct. 2783; Bruen, 142 S. Ct. at 2122) ("if there is a history and tradition of keeping guns from those engaged in criminal conduct, then the law[ ] here [is] constitutional whether the Second Amendment right belongs to all Americans or just to ordinary, law-abiding citizens.").

7

**B. History**

The Government alleges that Mr. Hemani committed the criminal act of possessing a handgun while being an unlawful drug user or an addict. 18 U.S.C. § 922(g)(3). They must justify the regulation of protected conduct through a historical analysis that shows § 922(g)(3) is consistent with the historical understanding of the Second Amendment. *Bruen*, 142 S. Ct. at 2132. *United States v Harrison*, CR-22-00328-PRW (W. Dist. Ok. February 3, 2023). They cannot.

**i. The Statute**

§ 922(g)(3) was first enacted by Congress in the Gun Control Act of 1968[8]. The statute initially prohibited any individual who was "an unlawful user of or addicted to marihuana or any depressant or stimulant drug ... or narcotic drug" from receiving a firearm, but it was amended in 1986 to broadly prohibit the receipt or possession of a firearm by any person who "is an unlawful user of or addicted[9] to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))[10]. In its modern form, it strips a person of their right to possess a firearm if that person is a unlawful user of or addicted to any unlawful controlled substance.

Thus § 922(g)(3) is firmly rooted in the mid-twentieth century - a century and a half after adoption of the Second Amendment. Regulations of such recent vintage cannot establish a historical tradition unless they confirm earlier practice. *Bruen*, 142 S. Ct. at 2137. In *Bruen* the Court would not even "address any of the 20th-century historical evidence brought to

---

[8] Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1220–21. The 1968 act originally placed the prohibition in subsection (h)(3). The Firearm Owners' Protection Act, enacted in 1986, reorganized the prohibition to its modern location in subsection (g)(3).

[9] The term "addict" means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction. 21 U.S.C.A. § 802(1).

[10] Firearm Owners' Protection Act, Pub. L. No. 99-308, §§ 102(6)(B), (D), 100 Stat. 449, 452 (1986).

bear by respondents or their *amici*," since such evidence "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 n.28.

Like § 922(g)(8) § 922(g)(3) does not have a sufficient historical analogue[11], and puts an unconstitutional burden on Mr. Hemani's Second Amendment right. *Bruen*, 142 S. Ct. at 2133.

## V. Void For Vagueness

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST., amend. V. Courts have long held that "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague, that it fails to give ordinary people fair notice of the conduct it punishes or is so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 596 (2015); *United States v. Williams*, 553 U.S. 285, 304 (2008); *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999).

---

[11] Limiting clauses exampled in *United States v Harrison*, CR-22-00328-PRW (W. Dist. Ok. February 3, 2023). 1 William Waller Hening, *The Statutes at Large: Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the Year 1619* 401–02, Act XII (1823) (prohibiting "shoot[ing] any gunns *at drinkeing* (marriages and ffuneralls onely [sic] excepted)"); *General Statutes of the State of Kansas* 378, ch. 31, § 282 (John M. Price et al. eds., 1868) ("[A]ny person *under the influence of intoxicating drink* . . . carrying on his person a pistol . . . or other deadly weapon, shall be subject to arrest upon charge of misdemeanor[.]"); *Revised Code of the Statute of Laws of the State of Mississippi* 776, ch. 77, § 2986 (J.A.P. Campbell ed., 1880) ("It shall not be lawful for any person to sell to any . . . *person intoxicated*, knowing him to be . . . *in a state of intoxication*" any concealable, deadly weapon.); *Supplement to the Revised Statutes of Wisconsin* 848, ch. 181, § 4397b(3) (A. L. Sanborn & J. R. Berryman eds., 1883) ("It shall be unlawful for any person *in a state of intoxication* to go armed with any pistol or revolver."); 1 *Revised Statutes of the State of Missouri* 854, ch. 47, § 3502 (Samuel C. Major et al. eds., 1889) ("If any person . . . shall have or carry any [deadly or dangerous weapon] upon or about his person *when intoxicated, or under the influence of intoxicating drinks* . . . shall, upon conviction, be punish by a fine . . . or by imprisonment[.]"); *Statutes of Oklahoma 1890* 495, ch. 25, art. 47, § 4 (Will T. Little et al. eds., 1891) (prohibiting "any public officer" from "carrying" certain specified arms, including a pistol or revolver, "*while under the influence of intoxicating drinks*"); 2 *Code of Laws of South Carolina* 318, ch. 12, § 252 (1902) ("Code of Laws of South Carolina") ("Any person who shall, without just cause or excuse, or *while under the influence, or feigning to be under the influence, of intoxicating liquors*, engaged in any boisterous conduct, or who shall, without just cause or excuse, discharge any gun, pistol or other firearm while upon or within fifty yards of any public road or highway, except upon his own premises, shall be guilty of a misdemeanor[.]") (all emphases added).

Where a law is so vague it violates a defendant's due process rights, "the role of courts under our constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *U.S. v. Davis,* 139 S. Ct. 2319, 2325 (2019). To act otherwise would be a violation of the separation of powers. *Davis*, 139 S. Ct. at 2333.

§922(g)(3) is unconstitutionally vague in that it (1) fails to define "unlawful user" or "addict", and (2) fails to provide a temporal nexus between the unlawful drug use and the possession of the firearm.[12]

As written, § 922(g)(3) must be stricken as facially void-for-vagueness. *See*, *United States v. Morales-Lopez*, No. 2:20-CR-00027-JNP, 2022 WL 2355920, at *8 (D. Utah June 30, 2022). Reading it as written would mean that anyone who had ever used an illegal drug, at any time, was prohibited from possessing a firearm. Appellate Courts have come to different conclusions trying to parse the inherent absurdity.

The Seventh Circuit noted unlawful drug users "could regain [their] right to possess a firearm by simply ending [their] drug abuse." *United States v. Yancey*, 621 F.3d 681, 696 (7th Cir. 2010). The Fourth Circuit concluded, "[s]ection 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance. Rather the statute prohibits *unlawful users* of controlled substances…from possessing firearms. *U.S. v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002). Moreover, several circuits, including the Fifth, have rejected such an expansive interpretation of § 922(g)(3) recognizing that a temporal nexus must be read into the statute to avoid rendering it unconstitutional. See *United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005) (upholding § 922(g)(3) against an "as

---

[12] Current Fifth Circuit precedent goes the opposite way.

applied" vagueness challenge) (citing *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citations omitted)). Legislative history does not clarify the definitions or intent.

Attempts to apply this logic to the legal status of various "drugs" across the United States are inconsistent to say the least. Thus, the plain language of the statute renders § 922(g)(3) facially unconstitutional because it subject to multiple interpretations each more problematic and ambiguous than the last.

Further, § 922(g)(3) is unconstitutionally vague as applied to Mr. Hemani as he did not have fair notice of the meaning of "drug user" or "addict" or the prohibited conduct.

## VI. Conclusion

18 U.S.C. § 922(g)(3), is unconstitutionally vague and unconstitutional under the Second Amendment. Wherefore, Mr. Hemani requests his indictment be dismissed.

Respectfully submitted,

/s/ Brian O'Shea
BRIAN O'SHEA
Assistant Federal Public Defender
Eastern District of Texas
7460 Warren Pkwy., Suite 270
Frisco, TX 75034
(469)362-8506
Brian_O'Shea@fd.org

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the  15th  day of February, 2023, a true and correct copy of the foregoing Defendant's MOTION TO DISMISS INDICTMENT was sent by CM/ECF to:

Heather Rattan
Assistant U.S. Attorney
101 E. Park Blvd., Suite 500
Plano, Texas 75074

/s/ Brian O'Shea
*Attorney for Defendant*