UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | No. 4:23-cr-00018 |
| | § | |
| ALI DANIAL HEMANI, | § | |
| | § | |
| Defendant | § | |

**DEFENDANT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Defendant, ALI DANIAL HEMANI, by and through his attorneys of record, CAMILLE M. KNIGHT and CARL DAVID MEDDERS, and pursuant to the Court's order of May 22, 2023, provides supplemental arguments and authorities in support of his Motion to Dismiss Indictment.  He respectfully requests that the Court conduct the two-step analysis set forth in *Bruen* and adopted by the Fifth Circuit in *Rahimi*, find that 18 U.S.C. § 922(g)(3) is an unconstitutional burden on his Second Amendment rights, and dismiss the Indictment in this case.

## Introduction

The Government's arguments in its Response (Dkt. 18) in this case, which track the Government's arguments in *United States v. Connelly*, ___ F.Supp.3d ___; 2023 WL 2806324 (W.D. Tex. Apr. 6, 2023), have been largely foreclosed by the Fifth Circuit's ruling in *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023).  *Rahimi* issued on March 2, 2023 (after Mr. Hemani's prior counsel filed his Motion to Dismiss Indictment and after the Government filed its Response).  In *Connelly*, the court initially denied the defendant's motion to dismiss, however, after *Rahimi* issued, reconsidered its ruling based on the recognition that prior Fifth Circuit cases -- which utilized the means-end scrutiny analysis repudiated in *N.Y. State Rifle & Pistol Ass'n, Inc. v Bruen*, 142 S.Ct.

2111 (2022) -- had been effectively overruled by *Rahimi*.  See *Connelly*, 2023 WL 2806324 at *3 (citing *Rahimi*, 61 F.4th at 450-451).

As discussed in both *Rahimi* and *Connelly*, the Supreme Court's decision in *Bruen* "fundamentally changed [the] analysis of laws that implicate the Second Amendment, rendering [] prior [Fifth Circuit] precedent obsolete." *Rahimi* at 450-451 (citations and quotations omitted).  The Court in *Bruen* repudiated legislative interest-balancing, holding that firearms regulations must conform to the Second Amendment's text and the country's historical regulatory tradition to pass constitutional muster.  *Bruen*, 142 S. Ct. at 2127, 2129-2130.  In *Rahimi*, the Fifth Circuit undertook the two-step analysis set forth in *Bruen* and held that 18 U.S.C. § 922(g)(8) was unconstitutional.  It thus vacated a defendant's conviction under that provision of § 922(g).  *Rahimi* at 461.

**I.   The Court Should Find in Accordance with *Connelly***

    **A.**    ***Connelly's* Procedural and Factual History**

The *Connelly* court first considered whether the relief sought under Fed. R. Crim. P. 12, which allows the Court to dismiss indictments that are defective under the law, was appropriate to apply.  *See Connelly* at *2 ("A court may rule on a pretrial motion to dismiss an indictment when the alleged infirmity "is essentially one of law." *United States v. Guthrie*, 720 F. App'x 199, 201 (5th Cir. 2018) (quoting *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).").  Judge Cardone then noted that "The propriety of ... dismiss[ing] an indictment ... by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *Id.* (citing *U.S. v. Fontenot*, 665 F.3d at 644).

In *Connelly*, Paola Connelly was arrested after officers were called to her home to investigate a call about shots fired.  When they arrived, Connelly's husband was outside with a

gun.  Officers conducted a protective sweep of the Connelly home and encountered marijuana, psilocybin, drug paraphernalia, marijuana plants, and multiple firearms that were registered to Paola Connelly.  She told the arresting officers that she sometimes smoked marijuana for anxiety, and that her husband recently used cocaine.  She was charged with being a user in possession of a firearm under 18 U.S.C. § 922(g)(3), and with unlawfully transferring a firearm to her husband, who was a user of a controlled substance, pursuant to § 922(d)(3).  *Connelly* at *1.  She was not charged with a drug crime.  *Id.* at *10.

Judge Cardone assumed, for purposes of considering the motion to dismiss, that "Connelly and her husband used controlled substances to the extent alleged by the Government."  *Id.* at 2.  Considering all the factual allegations in the Indictment to be true, the court found it appropriate to consider the motion to dismiss because the remaining issues in it were issues of law.  *Id.*

### B.     Procedural and Factual History in This Case

The facts in this case mirror those in *Connelly*.  On August 3, 2022, a Glock handgun registered to Mr. Hemani was found in his bedroom during the execution of a search warrant.  *See* Gov't Brief in Support of Pretrial Detention (Dkt. 14), filed under seal.  He made statements to law enforcement about his drug use.  *Id.*  He is charged with one count of being a drug user in possession of a firearm under 18 U.S.C. § 922(g)(3).  Thus, assuming *arguendo* for purposes of the Motion to Dismiss Indictment that these facts are true, the only remaining issue for the Court to consider is one of law:  whether § 922(g)(3) is constitutionally valid under current controlling case law in the Fifth Circuit (*Rahimi*).[1]

---

[1]  The Government will likely argue that because it has petitioned for certiorari in the United States Supreme Court, this Court should hold its decision on the Motion to Dismiss Indictment in abeyance while *Rahimi* pends.  The Government made the same request in *Connelly*, which was denied.  *Connelly* at *1.  Much like defendant Connelly, Mr. Hemani intends to invoke his right to speedy trial, particularly given his pretrial detention.

## II. The *Bruen* Analysis

### A. Who are "The People" Mentioned in the Second Amendment?

The Second Amendment's protection applies to all Americans. As it does in the instant matter, the Government in both *Rahimi* and *Connelly* argued that the Second Amendment's text referring to "the right of the people to keep and bear Arms," meant only "law-abiding" and "responsible" people. *Rahimi* at 451-452. The Fifth Circuit rejected this argument, noting that Zackey Rahimi, who was charged under § 922(g)(8), did not fall into any category of people "whose disarmament the Founders 'presumptively' tolerated or would have tolerated," as Rahimi had not been convicted of any crime when he was charged with illegally possessing a firearm. *Id.* at 452. The court also found that the Supreme Court's decisions *District of Columbia v. Heller*, 128 S.Ct. 2783, 2790-2791 (2008) and *Bruen* did not support a "malleable" definition of "the people" protected by the Second Amendment, because applying the protection to "law-abiding" people "admits to no true limiting principle." *Id.* at 453. The Court was clear in its holding that "the people" protected by the Second Amendment included all Americans. *Id.* This definition comports with the Supreme Court's interpretation of "the people" in *Heller*, 128 S.Ct. 2783, 2790-2791 (2008); *see also Kanter v. Barr*, 919 F.3d 437, 451-453 (7th Cir. 2019, Barrett, J., dissenting).

Judge Cardone considered the scope of "the people" in *Connelly*, noting that when Paola Connelly was charged under § 922(g)(3), she did not belong to any group of people whose disarmament the Founders did or would have tolerated; specifically, she had no prior felony conviction. *Connelly* at *4-5. "Indeed, Connelly's suspected criminal conduct – using controlled substances on occasion in her home – pales in comparison to Rahimi's – instigating five separate shootings in just over a month . . . If Rahimi can claim the Second Amendment's protection, then

Connelly can as well." *Id.* at *5; *accord, United States v. Perez-Gallan*, 2022 WL 16858516 at *9 (W.D. Tex. 2022) (dismissing an indictment charging a violation of § 922(g)(8) and stating that restricting "the people" to "law-abiding" or "responsible" citizens would "lead to absurd results," such as stripping Second Amendment rights from speeding drivers or from a shopkeeper who fails to post a "wet floor" sign).

      **B.**      **Does the Second Amendment Protects Hemani's Conduct?**

After finding that defendant Connelly was among "the people" protected by the Second Amendment, Judge Cardone delved into the two-step analysis set forth in *Bruen* and *Rahimi* by first determining whether the Second Amendment's plain text covered the defendant's conduct. The court reasoned that because § 922(g)(3) prohibited Connelly from possessing any firearm or ammunition, and because "possessing" arms was included within the Second Amendment's definition of "keeping" arms, the statute "burden[ed] conduct protected by the Second Amendment." *Connelly* at * 5.  In *Rahimi,* the Fifth Circuit similarly held that the Second Amendment's right to "keep" arms included "possession" of firearms. *Rahimi* at 454 ("the Second Amendment presumptively protects Rahimi's right to keep the weapons officers discovered in his home").

      **C.**      **The Government's "Virtuous" or "Law Abiding" Regulations Argument**

The Government urges the Court, as it did in *Connelly,* to consider more abstract and broad regulations disarming "unvirtuous" or "dangerous" or "presumptively risky" people.  Gov't Response (Dkt. 18), pp. 13-15.  Judge Cardone found these broader laws to be problematic to apply, citing the *Rahimi* court's distinction between "historical laws aimed generally at the preservation of political and social order" and "modern laws aimed at addressing specific issues." *Connelly* at *9.

Regarding the Government's argument that only unlawful individuals were affected by § 922(g)(3), Judge Cardone reiterated that Paola Connelly had not been convicted of or even charged with a drug crime. *Id.* at *10. Any attempt to define a broad malleable group of people affected by § 922(g)(3) suffers the same affliction decried in *Rahimi*:

> [T]he Government's proffered interpretation of "law-abiding" admits to no true limiting principle. Under the Government's reading, Congress could remove "unordinary" or "irresponsible" or "non-law-abiding" people—however expediently defined—from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? Political nonconformists? People who do not recycle or drive an electric vehicle?

*Rahimi* at 453. The *Rahimi* court considered the government's arguments about laws that disarmed "people considered to be dangerous, specifically including those unwilling to take an oath of allegiance, slaves, and Native Americans." *Id.* at 456-457. The court questioned whether laws disarming these groups created a "tenable" comparison to § 922(g) and determined the "utility [of such laws] as historical analogies" to be "dubious at best." *Id.* at 457. Applying a nebulous standard to try to determine which unlawful, dangerous, risky, or unvirtuous people can and cannot be disarmed for some time period necessarily requires the Court to engage in the "judge-empowering interest-balancing inquiry" rejected in *Bruen*. *See Bruen*, 142 S.Ct. at 2129 (stating, "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.")). (citations omitted). When comparing historical regulations with § 922(g)(3), therefore, the Court should only consider gun regulations aimed at the conduct proscribed by the modern statute.

### III.  Is § 922(g)(3) Consistent with Historical Gun Regulations?

####   A.    Intoxication Laws Cited by the Government

After finding that conduct is constitutionally protected, courts then consider whether the Government demonstrates that the firearm regulation at issue "is consistent with the Nation's historical tradition of firearm regulation." *Rahimi* at 453.  This involves an analysis of whether there were similar regulations "before, during, and even after" the founding [of the Nation] that evinced a comparable tradition of regulation." *Id.*  The Government has the burden of presenting "relevantly similar historical regulations that imposed a comparable burden on the right of armed self-defense that were also comparably justified." *Id.* at 455 (citations and quotations omitted).

The Government identified the same laws from the colonial era in both *Connelly* and in this case to merit the comparison.  *Connelly* at *6-7; Gov't Response (Dkt. 18), at pp. 12-13.  Those laws both involved intoxicated people.  Judge Cardone found that the Virginia law cited by the Government[2] was not relevantly similar to § 922(g)(3).  The *Bruen* court discussed the required analysis:

> The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding. In some cases, that inquiry will be fairly straightforward. For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

---

[2] In both *Connelly* and the instant case, the Government cited a 1655 Virginia law prohibiting "shoot[ing] guns at drinkeing (marriages and ffuneralls onely excepted) [sic]."

*Bruen,* 142 S.Ct. at 2131.  Judge Cardone compared the purpose of the Virginia law (protecting the colony from potential attacks from Native Americans by ensuring that warning shots would be recognized as warnings, as well as conserving military resources) with the purpose of § 922(g)(3), which "aimed to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence."  *Connelly* at * 6 (citations omitted).  She noted that protection from external threats (the Virginia law) was not relevantly similar to preserving domestic order by preventing violent crime (the Gun Control Act of 1968).  The court further stated that the laws were dissimilar in *how* they regulated gun use – the Virginia law prohibited using firearms while actively intoxicated, while § 922(g)(3) prohibits possession of firearms altogether.  After pointing out that § 922(g)(3) permits long gaps between actual drug use and possession, Judge Cardone found the statue was a "much more burdensome infringement on the Second Amendment's core protection than preventing people from shooting their guns while intoxicated." *Id.* at *7.

      As to the New York law, the Government admits it "was aimed at preventing the great damages frequently done [during the New Year's holiday] by persons . . . being often intoxicated with liquor."  Gov't Response (Dkt. 18), pp. 12-13.  Judge Cardone determined that the law "only prohibited the use of firearms for three days out of the year," in certain specific areas, resulting in "ample room for individuals to keep guns in their homes for self-defense." *Connelly* at *7-8.  She also noted that another district court found that the New York law was effective for only two years, and that the Government presented no other historical laws between 1771 and 1868 to show a well-established tradition of relevant regulation. *Id.* at *8 (citing *United States v.*

*Harrison*, ___ F. Supp. 3d ___, 2023 WL 1771138, at *9 (W.D. Okla. Feb. 3, 2023)).[3] Given the discord between historical gun regulation laws at the founding of the United States and § 922(g)(3), Judge Cardone found that the Government:

> . . . failed to carry its burden to demonstrate that § 922(g)(3) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. Section 922(g)(3) breaks with historical intoxication laws by prohibiting not just firearm use by those who are actively intoxicated but also firearm possession by those who use controlled substances, even somewhat irregularly. And it breaks with broader historical traditions of gun regulation by disarming individuals without any sort of pre-deprivation process.

*Connelly* at *12.

## Conclusion

This case is both factually and legally similar to *Connelly*. Legally, 18 U.S.C. § 922(g)(3) cannot pass constitutional muster. Mr. Hemani respectfully requests that the Court conduct the analysis announced in *Bruen*, applied in *Rahimi*, followed by *Connelly* and *Harrison*, and thereafter grant his Motion to Dismiss Indictment based on that analysis.

Respectfully submitted,

/s/ *Camille M. Knight*
Camille M. Knight
Texas State Bar No. 24027124
900 Jackson Street, Suite 430
Dallas, Texas 75202
214.871.1133
camille@cknightlaw.com

---

[3] In *United States v. Harrison*, 2023 WL 1771138 (W.D. Okla., Feb. 3, 2023), the court found that 18 U.S.C. § 922(g)(3) violated the defendant's Second Amendment right to possess a firearm and dismissed the indictment against him with prejudice.

/s/ *Carl David Medders*
BURLESON, PATE & GIBSON, LLP
D. C. Bar No. 494911
900 Jackson Street, Suite 330
Dallas, Texas 75202
214.871.4900
dmedders@bp-g.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2023, I electronically filed the foregoing document using the Court's CM/ECF system, thereby providing service on attorneys of record.

/s/ *Camille M. Knight*
Camille M. Knight