IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Crim. No. 4:23-cr-18-ALM-KPJ-1 |
| § | |
| ALI DANIAL HEMANI (1), § | |
| § | |
| Defendant. § | |
| § | |

**OPINION AND ORDER**

Defendant Ali Danial Hemani ("Defendant") filed the "Motion for Revocation or Amendment of Detention Order Pending Judicial Proceedings" (the "Motion to Reopen Detention") (Dkt. 36). The Government filed a response (Dkt. 39) and Defendant filed a reply (Dkt. 40). On June 15, 2023, the Court held a hearing on the Motion to Reopen Detention (Dkt. 36) and ordered Defendant and the Government provide supplemental briefing. *See* Minute Entry for June 15, 2023. Defendant filed the Supplemental Brief in Support of Reopening the Hearing on Government's Motion for Detention (the "Defendant's Supplemental Brief") (Dkt. 53) under seal, and the Government filed a Response to Defendant's Supplemental Brief in Support of Reopening the Detention Hearing (the "Government's Supplemental Brief") (Dkt. 56). Upon consideration, the Court finds the Motion to Reopen Detention (Dkt. 36) is hereby **DENIED**, and Defendant should remain **DETAINED** pending trial.

**I.  BACKGROUND**

The Government alleges that in August 2022, Defendant, knowing that he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, knowingly possessed a Glock 19 9mm pistol bearing serial number BRWX640. *See* Dkt. 1 at 1. On February 8, 2023, the Grand

1

Jury returned a single count Indictment charging Defendant with violation of 18 U.S.C. § 922(g)(3). *See id.* On February 10, 2023, Defendant was arrested and made an initial appearance before the undersigned on February 13, 2023. *See* Minute Entry for February 10, 2023; Dkt. 4.

The Court held a detention hearing on February 16, 2023, which was continued on March 9, 2023 (Dkts. 15, 22, 26) pursuant to Defendant's request. On March 21, 2023, the Court entered an Opinion and Order (the "Detention Order") (Dkt. 31) denying Defendant's Motion for Pretrial Release (Dkt. 21), granting the Government's motion for detention, and finding Defendant should be detained pending trial. *See* Dkt. 31 at 20.

The Court found, based on the evidence presented, the Government had proven by a preponderance of the evidence that Defendant is a serious risk of flight and that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required. *See id.* at 15. Additionally, the Court found, based on the evidence presented, Defendant poses a serious risk that he will obstruct or attempt to obstruct justice. *See id.* In relevant part, the Court found Defendant should be detained for the following reasons: the weight of the evidence that Defendant violated 18 U.S.C. § 922(g)(3) is strong; Defendant and his family have shown support for Qasem Soleimani ("Soleimani"), the leader of the Quds force, a branch of Iran's Islamic Revolutionary Guard Corps ("IRGC") that has been designated a terrorist organization by the United States; Defendant and his family utilized counter-surveillance measures including wiping Defendant's cellphone data on his return trip from Iran in July 2022, evasive driving techniques, "scrambling" of flight itineraries, and counter-surveillance at Dallas-Fort Worth Airport ("DFW"); Defendant failed to inform Pretrial Services of his travel to Iran in February 2020, a month following the death of Soleimani, and failed to inform Pretrial Services of being a dual citizen with Pakistan; Defendant admitted he would not inform law enforcement of an imminent attack against

the United States; and Defendant's familial connections in Iran, including Defendant's brother Mohammed Hemani, his aunt and uncle; and the risk of flight due to the United States and Iran not maintaining diplomatic relations. *See id.* at 15–20. The Court further emphasized that "[i]t is not Defendant's or his family's religious beliefs, his family's national identity, or his anti-American sentiments that weigh[ed] in favor of detention" but "rather Defendant's *own* actions that make clear he is a serious risk of flight and a serious risk that he will obstruct or attempt to obstruct justice." *Id.* at 18–19 (emphasis in original).

On March 29, 2023, Defendant filed the Unopposed Motion to Substitute Counsel (Dkt. 32), which the Court granted on March 31, 2023. *See* Dkt. 34. On April 5, 2023, Defendant filed the Motion to Reopen Detention (Dkt. 36) arguing the Government made broad accusations against Defendant and his family's beliefs, and the Government mischaracterized travel made for religious purposes in February 2020 and July 2022. *See id.* at 2–4. Defendant further argued that new evidence explained the logistics of the family's travel on July 25, 2022, including emails regarding these bookings and boarding passes, that show Defendant traveled to New York City on July 25, 2022, and then to Dallas-Fort Worth Airport the same day; Defendant thus asserts the evidence presented by the Government misled the Court to conclude that Defendant stayed overnight in New York City on July 24, 2022, and then traveled to Dallas-Fort Worth Airport the following day on July 25, 2022. *See id.* at 4–5.

On April 18, 2023, the Government filed the Unopposed Motion for Extension of Time to File Response (Dkt. 37), which the Court granted the same day. *See* Dkt. 38. On April 24, 2023, the Government filed its response (Dkt. 39) arguing Defendant waived his right to review of the Detention Order (Dkt. 31) as the Motion to Reopen Detention (Dkt. 36) was not timely filed within the fourteen days prescribed by Fed. R. Crim. P. 59(a). Dkt. 39 at 2 (citing *United States v. Parrish*,

3

No. 3:19-CR-160-L (02), 2020 WL 5922044, at *4 (N.D. Tex. May 20, 2020), *R. & R. adopted*, 2020 WL 3440890 (N.D. Tex. June 23, 2020); *United States v. Pineda-Diaz*, No. 3:20-CR-004-S, 2020 WL 2747421, at *1 (N.D. Tex. May 26, 2020)). The Government further argued, reiterating its earlier arguments regarding detention: Defendant is a flight risk; Defendant is a risk of obstruction due to his lies to Pretrial Services; the 18 U.S.C. § 3142(g) factors weigh in favor of detention; and Defendant's previously proffered third-party custodians are not appropriate due to their support for Soleimani. *See* Dkt. 39 at 4–11. On April 28, 2023, Defendant filed a reply (Dkt. 40) arguing Defendant received the boarding pass in discovery the day after the Detention Order (Dkt. 31) and, thus, "Defendant contends that the information comports with the requirements of 18 U.S.C. § 3142(f)(2)(B), allowing for the reopening of a detention hearing based on new information that was not known to the movant at the time of the detention hearing." Dkt. 40 at 2.

On May 16, 2023, U.S. District Judge Amos L. Mazzant, III, found Defendant had "acknowledged that he failed to timely ask the district court to review the [M]agistrate [J]udge's detention order" and "[i]n light of this, the Defendant is now asking the Magistrate Judge to reopen the detention hearing based on the discovery of new evidence." Dkt. 41 at 1. Accordingly, Judge Mazzant "return[ed] this matter" to the undersigned "to decide whether to reopen the detention hearing." *Id.* On May 22, 2023, the Court set the Motion to Reopen Detention (Dkt. 36) for hearing on June 8, 2023. *See* Minute Entry for May 22, 2023. On May 22, 2023, Defendant filed the Unopposed Motion to Continue Hearing (Dkt. 44), which the Court granted on May 23, 2023. *See* Dkt. 45.

On June 15, 2023, the Court held the hearing on the Motion to Reopen Detention (Dkt. 36). *See* Minute Entry for June 15, 2023. During the hearing, Defendant asserted there was additional new evidence that disputed the Government's assertions regarding Defendant's travel to Houston

4

on June 28, 2022. *See id.* In response, the Government asserted this information was not new or material to the issue of reopening detention. *See id.* At the conclusion of the hearing, the Court directed Defendant to provide supplemental briefing as to the Motion to Reopen Detention (Dkt. 36) within seven days, and provided the Government seven days to respond to Defendant's supplemental brief.

On June 23, 2023, Defendant filed Defendant's Supplemental Brief (Dkt. 53) under seal.[1] In Defendant's Supplemental Brief (Dkt. 53), Defendant argues there is new evidence—specifically communications from the State of Qatar regarding Defendant's COVID vaccination status—that show Defendant traveled separately from his family due to his COVID vaccination status and not in order to evade surveillance. *See* Dkt. 53 at 3–4. Defendant further argues there is additional new evidence—specifically copies of his plane tickets, his boarding pass dated July 25, 2022, and a Zelle[2] transaction for an Uber[3] ride from John F. Kennedy Airport ("JFK") to LaGuardia Airport ("LGA")—showing Defendant bought two plane tickets to return from JFK and LGA to DFW on July 25, 2022, due to concerns about missing his return flight to DFW once arriving in the United States. *See id.* at 4. Defendant argues there is also new evidence—pictures taken during the stop with metadata reflecting the stop occurred around 7:00 p.m., and a bank statement showing a debit card transaction for gas in Houston on June 28, 2022—that contradicts Detective Jason Hollingshead's ("Detective Hollingshead") testimony in the earlier detention hearings that Defendant and his family drove at high rates of speed from Lewisville to Houston at

---

[1] Defendant originally filed a supplemental brief (Dkt. 51-2) under seal on June 22, 2023; however, the Clerk's office informed Defendant that this filing was not in compliance with the local rules of the Eastern District of Texas because Defendant failed to file a separate motion for leave to file under seal. Thus, the relevant pleading is Defendant's Supplemental Brief (Dkt. 53).

[2] Zelle is a digital payments network enabling individuals to electronically transfer money from their bank account to another registered user's bank account.

[3] Uber is a popular rideshare application platform that provides taxi services.

10:30 p.m., and used counter-surveillance techniques while driving. *See id.* at 4–5. Finally, Defendant asserts there is new evidence—a copy of the itinerary of plane tickets—that shows Defendant and his family's trip to Iran in February 2020 was previously planned in October 2019, and was not for Soleimani's funeral as Detective Hollingshead represented. *See id.* at 5–6. Additionally, Defendant "concedes that [Defendant] knew why he traveled separately from his family and why they went to Houston at the time of the hearings," but Defendant "did not have discovery and his parents were effectively unavailable as witnesses by virtue of the Government accusations against them." *Id.* at 6. Defendant asserts there is a "need to present new evidence. . . because of the Government's unsettling pattern of conduct" and Defendant is "now able to present new evidence which was not available to him at the time of the hearings." *Id.*

In support, Defendant includes the following: emails dated July 21, 2022, with the subject "The Status of the Request Number: 6437681" from the email address ehteraz@moi.gov.qa, *see* Dkts. 53-1, 53-2; email dated July 22, 2022 at 6:02 a.m., containing booking confirmation from CheapOair[4] for an American Airlines flight from LGA to DFW on July 25, 2022, *see* Dkt. 53-3; American Airlines boarding passes dated July 25, 2022, from Doha, Qatar to JFK and from LGA to DFW, *see* Dkt. 53-4; email dated July 22, 2022 at 6:35 a.m., containing booking information for a Delta Airlines flight from JFK to LGA on July 25, 2022, *see* Dkt. 53-5; an email dated July 25, 2022 at 10:35 a.m., from Capital One regarding a Zelle payment transaction with the title "Uber to LGA," Dkt. 53-6; a photograph of the front of a vehicle dated July 28, 2022 at 7:24 p.m., with metadata location between Colle Park, Texas and Shenandoah, Texas, *see* Dkt. 53-7; a bank transaction statement for Nadim Hemani, containing a transaction on June 28, 2022 for $18.05 in Houston, *see* Dkt. 53-8; an email containing a booking confirmation from October 29, 2019 for

---

[4] CheapOair is an online travel agency website.

Sameena Hemani, Defendant's mother, purchased from CheapOair for a multi-leg flight from DFW to Iran on January 28, 2020 and a return flight on March 1, 2020, *see* Dkt. 53-9.

On June 28, 2023, the Government filed the Government's Supplemental Brief (Dkt. 56), wherein the Government asserts Defendant's proffered evidence is neither "new" nor "material." Dkt. 56 at 2–6. The Government argues Defendant "could have presented the arguments he raises now through any witness- he did not have to rely on his parents" because "[t]he rules governing the admissibility of evidence in criminal trials do not apply to detention hearings." *Id.* at 3–4 (citing 18 U.S.C. § 3142(f); FED. R. EVID. 1101(d)(3)). The Government further argues Defendant's evidence is not "material" because it is not capable of "significantly affecting" the detention decision. *See id.* at 4 (quoting *United States v. Worrell*, No. 1:21-CR-00292, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021) *appeal dismissed*, No. 21-3040, 2021 WL 4765445 (D.C. Cir. Sept. 15, 2021)). Finally, the Government avers Defendant had a photograph of Soleimani and Abud Mahdi al-Muhandis, the deputy leader of the Iraqi militia known as the Popular Mobilization Forces ("PMF"), as the contact photograph for one of his proposed third-party custodians, Ali Sheikholeslam-Nouri. *See id.* at 6.

## II.   LEGAL STANDARD

18 U.S.C. § 3142(f)(2)(B) sets forth in relevant part:

> The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2)(B).

Courts may deny a motion to reopen detention because the evidence proffered is not new or because it would not have material bearing on the detention decision. *See United States v. Hare*,

7

873 F.d 796, 799 (5th Cir. 1989); *accord United States v. Stanford*, 341 F. App'x 979, 984 (5th Cir. 2009) ("It cannot therefore be said that [the witnesses'] testimony was newly discovered or previously unavailable."). "Courts interpreting 'new and material information' for purposes of § 3142(f) require 'truly changed circumstances, something unexpected, or a significant event,' and courts have interpreted the requirements of this provision strictly" such that a "defendant cannot re-open detention to present evidence that he could have investigated before the detention hearing." *United States v. Jacob*, No. CR 21-31, 2023 WL 2867324, at *5 (E.D. La. Apr. 10, 2023) (citations omitted). Accordingly, courts have interpreted 18 U.S.C. § "3142(f)'s 'not known to the movant at the time of the hearing' 'language to mean not just actual knowledge, but also constructive knowledge, i.e., knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person.'" *United States v. Munguia*, No. 3:19-cr-191-B, 2020 WL 1471741, at *3 (N.D. Tex. Mar. 26, 2020).

As to whether evidence has "material bearing," new evidence "must relate in some *significant* or *essential* way to the decision whether to detain." *Worrell*, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021) (citing *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003)) (emphasis in original); *see also United States v. Martin*, No. 13-00466 JSW (KAW), 2015 WL 1738362, at *2 (N.D. Cal. Apr. 13, 2015) ("[T]he purpose of [18 U.S.C. § 3142(f)(2)(B)]. . . . is to allow parties to present unknown information that increases the chances the defendant appears for their criminal hearing, or decrease the danger the defendant poses to an individual or the community as a whole.").

### III.  ANALYSIS

First, the Court concludes that the proffered evidence does not qualify as "new," i.e., "information . . . that was not known to the movant at the time of the hearing." 18 U.S.C. §

3142(f)(2)(B). None of Defendant's proffered evidence—emails to Defendant and Defendant's family, the boarding passes, booking confirmations, the photograph with metadata, the Zelle transaction payment, and debit card transaction statement—were unknown to Defendant at the February 16, and March 9, 2023 hearings. The emails to Defendant and Defendant's family, the boarding passes, booking confirmations, and Zelle transaction payment were known to Defendant directly before the February 16, 2023 detention hearing; and it cannot be said that Defendant did not have constructive knowledge of the photograph with metadata and debit card transaction statement, as reasonable diligence and investigation regarding documents possessed by Defendant's family would have revealed such information. *See Munguia*, 2020 WL 1471741, at *3; *United States v. Chappell*, No. 3:17-CR-361-B (2), 2017 WL 11517833, at *4 (N.D. Tex. Oct. 10, 2017) ("That, having found his employer's contact information and spoken to him after the hearing, Defendant or his counsel has now learned that his employer would be willing to allow Defendant to live with him and to serve as a third-party custodian does not justify reopening the hearing as the kind of new information or newly discovered evidence that Section 3142(f)(2) contemplates.").

In fact, Defendant concedes "that [Defendant] knew why he traveled separately from his family and why they went to Houston at the time of the hearings," and it is unclear why Defendant required discovery from the Government to find relevant documents that were in his family's possession. Dkt. 53 at 6. Furthermore, Defendant requested, and the Court granted, a continuance of the detention hearing twenty-one days after the initial hearing. And while Defendant avers that Defendant's parents were unable to testify at the February 16, 2023 hearing due to concerns regarding criminal action being taken against them, Defendant could have presented another party

9

or proffered such evidence. Accordingly, such information cannot be construed as "information . . . that was not known to the movant at the time of the hearing." Section 3142(f)(2)(B).

Moreover, Defendant's proffered evidence does not have a "material bearing" on the issue of detention and, ultimately, does not warrant pretrial release. Defendant avers his evidence undermines the Government's assertions that he engaged in "scrambling" on his return trip from Iran in July 2022, utilized counter-surveillance techniques on the June 2022 trip to Houston, and traveled to Iran for the funeral of Soleimani in February 2020. As to "scrambling," Defendant does not address the larger context of the July 2022 trip to Iran. The Government provided testimony that a previous border search of Defendant's cellphone had revealed communications with the IRGC and his cellphone data had been wiped in a sophisticated manner before the July 2022 border search. Critically, Defendant does not address that Defendant's brother and father waited for Defendant at DFW, were present in the terminal when Defendant was present but did not approach Defendant in the terminal, and instead first met him in the parking lot. Detective Hollingshead testified that such actions were counter-surveillance measures used to ascertain whether Defendant was being followed, and Defendant's evidence does not address this testimony or dispute it in any manner. Regarding Defendant's travel to Houston in June 2022, Defendant's evidence goes to the travel being several hours earlier in the day than 10:30 p.m., as testified to by Detective Hollingshead. But it is unclear how this evidence—a photograph of the front license plate of a vehicle and a debit card charge statement—disputes Detective Hollingshead's testimony that Defendant and his entire family utilized counter-surveillance techniques while driving towards Houston, Defendant's family immediately drove back to Lewisville after dropping Defendant off in Houston, and Defendant returned home alone the following morning by bus. This evidence does not have a "material bearing" on the issue of detention because it does not relate in a "*significant*"

way to the concerns Defendant is a flight risk and that he and his family have practiced counter-surveillance techniques. *Worrell*, 2021 WL 2366934, at *9 (D.D.C. June 9, 2021)

As to Defendant's assertions about the travel to Iran in February 2020, the Court's concern as noted in the Detention Order (Dkt. 31) was principally Defendant's failure to inform Pretrial Services that he had traveled to Iran in February 2020 and held dual citizenship with Pakistan. *See* Dkt. 31 at 18. Defendant further has frequently traveled to Iran, Defendant's brother, as well as his aunt and uncle, reside in Iran, and Iran does not have diplomatic relations with the United States ensuring extradition would be an impossibility. In addition, Detective Hollingshead testified Defendant admitted that he would not inform law enforcement of an imminent attack against the United States. Thus, the Court concluded that the lies by omission to Pretrial Services were more troubling than mere forgetfulness and that this fuller context caused serious concern that Defendant had the knowledge to evade pretrial release conditions and to obstruct justice. *See id.* Accordingly, the Court concludes that Defendant's proffered evidence does not have a "material bearing" on the decision to detain.

The Court must note again that Defendant's *own* actions are the basis for detention. To the extent Defendant complains of the Government's presentation of evidence as straying into the domain of his First Amendment rights, this Court made clear that such evidence did not weigh in favor of detention. *See* Dkt. 31 at 19 ("[The] right [to express one's religious beliefs] is at the heart of the First Amendment and the ability to practice freely without fear of repercussion is a core ideal of the United States" (citing *Hassan v. City of New York*, 804 F.3d 277, 309 (3d Cir. 2015))). Rather, the Court found Defendant's communications with the IRGC, Defendant's wiping of cellphone data before the July 2022 border search, Defendant's lies of omission with Pretrial Services, Defendant's statements to law enforcement, Defendant's close family connections to

11

Iran, the lack of diplomatic relations between Iran and the United States, and Defendant and his family's use of counter-surveillance techniques weighed in favor of pretrial detention. As discussed above, Defendant does not address several of these issues, and the Court concluded the Government had met its burden of persuasion that Defendant should be detained. Defendant's proffered evidence does not change this conclusion.

### IV.   CONCLUSION

For the foregoing reasons, the Court orders the Motion to Reopen Detention (Dkt. 36) is hereby **DENIED**, and Defendant should remain **DETAINED** pending trial.

**So ORDERED and SIGNED this 31st day of July, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE